# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT
_____

## Appeal No. 21-13561-CC

_____

### CLYDE ANTHONY,

Plaintiff-Appellant,

versus

### GEORGIA DEPARTMENT OF PUBLIC SAFETY,

Defendant-Appellee.

_____

**On Appeal from the United States District Court
For the Northern District of Georgia
District Court Docket No. 1:19-CV-05303-SDG**

_____

**APPELLANT'S BRIEF**

ETHEL L. MUNSON
*Attorney for Appellant*
3295 River Exchange Drive
Suite 510
Norcross, Georgia 30092
(770) 449-7630

*Anthony v. Department of Public Safety*
Appeal No. 21-13561-CC

<u>CERTIFICATE OF INTERESTED PERSONS AND</u>

<u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Eleventh Circuit Rule 26.1-1, the following is an alphabetical list of the trial judges, attorneys, persons, firms, partnerships and corporations with any known interest.

1.    Anthony, Clyde

2.    Carr, Christopher M., Esq.

3.    Grimberg Steven D., Honorable

4.    Munson, Ethel L., Esq.

5.    Poole, Courtney C., Esq.

6.    Stoff, Katherine P., Esq.

7.    Webb, Bryan, Esq.

8.    Walker, Linda T., Honorable

## STATEMENT REGARDING ORAL ARGUMENT

Appellant would desire oral argument because what acts of the employer that can   constitute adverse actions have been or are in the developmental stage in just about every circuit inclusive of the Supreme Court.

# **TABLE OF CONTENTS**

*Page*

CERTIFICATE OF INTERESTED PERSONS.................................................ii

STATEMENT OF ORAL ARGUMENTS .......................................................iii

TABLE OF CONTENTS.................................................................iv

TABLE OF CITATIONS ................................................................vi

STATEMENT OF JURISDICTION ................................................................x

STATEMENT OF THE ISSUES........................................................1

STATEMENT OF THE CASE........................................................2

SUMMARY OF ARGUMENT ........................................................6

ARGUMENT AND CITATIONS OF AUTHORITY

- WHETHER THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT ?....................................7

- WHETHER DOCUMENTS FROM AN EEOC INVESTIGATION FILE CAN BE USED IN SUMMARY JUDGMENT WITHOUT AUTHENTIFICATION?............................... 25

- WHETHER ANTHONY WAS DENIED THE OPPORTUNITY TO SIT FOR THE

CORPORAL EXAM BECAUSE OF HIS

RACE? ............................................................................. 27


CONCLUSION.......................................................................29

CERTIFICATE OF COMPLIANCE .....................................30

CERTIFICATE OF SERVICE................................................31

# <u>TABLE OF CITATIONS</u>

Cases

*A.L.V. v. Jackson Cnty Sch. Bd.,*

  635 Fed. Appx. 774 (11th Cir. 2015).......................................................... 15

*Abel v. Dubberly*

  210 F.3d 1334 (11th Cir. 2000) .....................................................................9

*Anderson v. Libby Lobby,*

  477 U.S. 242 (1986)). ................................................................................. 25

*\*Barfield v. Orange County,*

  911 F.2d 644 (11th Cir. 1990..................................................................... 25

*Bass v. Board of County Commissioners,*

  256 F.3d 1095 (11th Cir. 2001) ................................................................. 20

*Beech Aircraft Corp. v. Rainey,*

  488 U.S. 153, 109 S. Ct. 439, 102 L.Ed.2d 445 (1988). ........................... 25

*Cuevas v. Am. Express Travel Related Servs.,*

  2006 Dist. LEXIS 11029 (S.D. Fla) .............................................................8

*Connecticut v. Teal,*

  457 U.S. 440 (1982).................................................................................... 27

*Dahlia v. Rodriguez*

  755 F.3d 1060 (9th Cir. 2013) ................................................................... 22

*EEOC v. Total System Servs., Inc.*

  221 F.3d 1171 (11th Cir. 2000). ................................................................... 16

*Fitzpatrick v. City of Atlanta,*

  2 F.3d 1112 (11th Cir. 1993) ......................................................................... 5

*Floyd v. Fed. Exp. Corp.,*

  423 Fed. Appx. 924 (11th Cir. 2011) ........................................................... 11

*Jones v. UPS Ground Freight,*

  683 F.3d 1283 (11th Cir. 2012) .................................................................... 26

*Kamen v. Kemper Fin. Serv. Inc.,*

  500 U.S. 90, 111 S. Ct. 1711, 114 L.Ed.2d 152 (1991 ................................. 6

*Karas v. New NGC, Inc.*

  2013 U.S. Dist. LEXIS 193610 (N.D. Ga.) ................................................. 27

*Macuba v. DeBoer,*

  193 F.3d 1316 (11th Cir. 1999) .................................................................... 29

*Maddow v. Proctor & Gamble*,

  107 F.3d 846 (1997) ..................................................................................... 32

*McCann v. Tillman,*

  526 F.3d 1370 (11th Cir. 2008) .................................................................... 23

*McMillian v. Johnson*,

  88 F.3d 1573 (11th Cir. 1996) ...................................................................... 26

*Miller-El v. Dretke*,

545 U.S. 231, 125 S. Ct. 2317 (2005)........................................................... 15

*Olson v. Superior Pontiac-GMC, Inc.,*

  776 F.2d 265 (11ᵗʰ Cir. 1985) ........................................................ 6

*St. Mary's Honor Ctr. v. Hicks,*

  509 U.S. 502, 113 S. Ct. 2742, 125 L.Ed.2d 407 (1993)............................. 23

*Streeter v. City of Pensacola*,

  2011 U.S. Dist. LEXIS 162605 (N.D. Fla. 2011)

  *aff'd,* 501 Fed. Appx. 882 (11ᵗʰ Cir. 2012). ................................................. 15

*Texas. Dept. of Community Affairs v. Burdine,*

  450 U.S. 248 (1981)........................................................................................ 7

*United States v. Stein,*

  881 F.3d 853 (11ᵗʰ Cir. 2018) ...................................................................... 19

*Valdeo v. City of Doral,*

  662 Fed. Appx. 803 (11ᵗʰ Cir. 2016)............................................................ 22

*Vessel v. Independent School System,*

  763 (11ᵗʰ Cir. 2000)................................................................................. 7, 28

*Walker v. Mortham,*

  158 F.3d 1177 (11ᵗʰ Cir. 1998) ............................................................... 7, 28

*Weldon v. Kraft, Inc.,*

  896 F.2d 793 (3d Cir. 1990). ........................................................................ 19

*White v. EEOC*,

881 F.2d 1006 (11th Cir. 1989) ..................................................... 28

Rules

F.R.Evid. 901(a) ......................................................................... 26

Regulations

*C.F.R. § 40.251-253* ...................................................................... 10

*49 C.F.R. §.40.243-245* ................................................................ 9

*Ga. Reg.478-1-21* ................................................................. 13, 14

Statutes

*Civil Rights Act of 1964 "Title VII"*

42 U.S.C. § 2000e ...................................................................... 2, 22

42 U.S.C. § 1983 ........................................................................... 2

## STATEMENT OF JURISDICTION

This is an appeal of a final order of the district court pursuant to 28 U.S.C. § 1291.

**ISSUES PRESENTED FOR REVIEW**

I.      WHETHER THE DISTRICT COURT ERRED IN GRANTING

SUMMARY JUDGMENT?

II.     WHETHER DOCUMENTS FROM AN EEOC INVESTIGATION

FILE CAN BE USED IN SUMMARY JUDGMENT PROCEEDINGS

WITHOUT AUTHENTICATION?

III.    WHETHER ANTHONY WAS DENIED THE OPPORTUNITY TO

SIT FOR THE CORPORAL EXAM BECAUSE OF HIS RACE?

**STATEMENT OF THE CASE**

(A) <u>The Proceedings in the Court Below</u>

Anthony filed an EEOC charge based upon race when he was subject to disparate treatment during an investigation of whether he reported to duty while being under the influence of alcohol [doc. 41, ex 20 (*Pl dep*.)]. Anthony also asserted a race-based class claim that African Americans were disproportionately denied promotions to corporal and above positions, *id*.

The EEOC issued a no-cause finding to the individual race claims but found cause concerning the class wide claim – that blacks as a class were discriminated against in receiving timely promotions. Anthony received the right-to sue letter on, or around, August 22, 2019. The EEOC later decided since plaintiff had not been rejected for a promotion during the relevant timeframe that the EEOC would not pursue conciliatory efforts relative to the class claim, and it was subsequently dismissed.

Pursuant to Title VII and 42 U.S.C. § 1983, Anthony filed suit against his then employer, Georgia Department of Public Safety, hereinafter, "DPS", and the two supervisors who initiated the investigation in their individual capacity  on August 5, 2017, alleging race discrimination [doc. 1]. Shortly thereafter, plaintiff changed counsel and his present counsel filed an amended

complaint deleting the 42 U.S.C. § 1983 claims against the individual capacity defendants [doc. 9].

The employer moved for summary judgment as to all counts, and Anthony responded thereto [doc. 45, doc. 47]. The magistrate judge recommended that DPS's motion be granted [doc. 55]. The district court agreed with the magistrate judge, "Judge Walker," as the district court referred to this magistrate judge [doc. 64]. Anthony disagreeing with the district court filed his timely notice of appeal on October 12, 2021 [doc. 66].

(B) Statement of Facts

 Clyde Anthony, an African American, was a long-standing employee of the Georgia Department of Public Safety, hereinafter "DPS."  He was hired in March 2007 as a Communication Equipment Officer, and he subsequently met the requirements to become a State Trooper in February 2010.

On August 5, 2017, Anthony was charged with reporting for duty while having alcohol in his system. Anthony underwent two preliminary breathalyzer tests administered by Lt. Jackson and Sargent Buchan [doc. 41 at 17:-20-21; 18:13-14 (*Pl dep.*)]. According to his then supervisors, he blew positive [doc. 41 at 18:15-16 (*Pl dep*.)]. The results were not shown to Anthony, *id.* Immediately, Anthony was transported to a third-party, offsite

3

testing facility, and given a superior breathalyzer test which indicated that he had no alcohol or traces of such in his system [doc. at 19:23-25 (*Pl dep*.)]. Anthony was relieved of his badge and shield and placed on an indefinite administrative leave [doc. 41 at 22:14-16 (*Pl dep*)].

Anthony at this time had been authorized by the department to do secondary employment at the Passion City Church [doc. at 44:13-22 (*Pl dep*.)]. Sargent Buchanan directed Anthony not to be involved with any law enforcement secondary work or any work related thereto [doc. 41 at 64:13-15 (*Pl dep.*)]. Anthony had earned approximately $30,000 performing this secondary work the prior year [doc. 41 at 44:23-25; 45:1-6 (*Pl dep*.)].

Anthony was required to pass a fitness for duty evaluation prior to his return to duty on January 28, 2018 [doc. 41 at 64:13-15 (*Pl dep*.)]. Anthony was told by his then Corporal that he could not be involved in any matters concerning the Department while he was on administrative leave [doc. at 100:12-14 (*Pl dep*.); doc. 47-2 ¶ 10 (*Pl dec.*)]. As such, Anthony did not take the Corporal exam scheduled for mid-January 2018.

In December 2017, Major Waldrop initiated a baseless Internal Affair social media complaint against Anthony [doc. 41 at 73:16 (*Pl dep.*)]. The bases of the complaint were Anthony's marketing of a ***future*** product to

monitor blood alcohol prior to driving and his alleged engagement in secondary employment with World Global Network without authorization, *id.* The investigation was eventually "swept under the rug," and Anthony received no discipline.

African-American troopers were systematically discriminated against in promotions corporals and above [doc. 47-2 ¶ (*Pl dec.*)] (the EEOC found cause for the class complaint and communicated to Anthony that African Americans were systemically discriminated against for higher level positions based upon race. (corporals and higher)). The EEOC mailed the parties a conciliation package.

(C ) <u>Standard of Review</u>

The review of summary judgment in this court is *de nova* (*See Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir. 1993)). When an issue is properly before this court, the court is not limited to the particular legal theories advanced by the parties but rather the court of appeals retains independent power to identify and apply the proper construction of governing law (*See Kamen v. Kemper Fin. Serv. Inc.,* 500 U.S. 90, 99, 111 S. Ct. 1711 1718, 114 L.Ed.2d 152 (1991); *Olson v. Superior Pontiac-GMC, Inc.,* 776 F.2d 265, 267 (11th Cir. 1985)).

## SUMMARY OF LEGAL ARGUMENT

Anthony's arguments demonstrate that there is a distinction between discrimination in the investigation stage and discrimination in the final discipline stage. A protected class employee can be discriminated against during the investigation stage even if he suffers no discrimination in the discipline stage.

If the protected class employee suffers an adverse action because of this differential treatment in the investigation stage, he may maintain a valid Title VII cause of action regardless as to the outcome of the discipline stage. The two stages do not necessarily merge as one cause of action. Otherwise treating the protected class employee correctly in the discipline stage does not erase the harm or resulting damages caused by a discriminatory investigation.

Anthony will also demonstrate that documents contained in the official EEOC investigation file and upon which the Commission acted are admissible as EEOC findings made during an official investigation. As such,  these documents are admissible at trial, and need not be authenticated before then. However, these documents may be used during summary judgment proceedings even if they are not authenticated.

I.    WHETHER DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT?

The district court, adopting the recommendation of its magistrate judge, "Judge Walker," determines that Anthony cannot make a *prima facie* case because he cannot demonstrate that he suffered an adverse action, and that he was treated worse than his non-protected class, comparator [doc. 64 at 5].

A.    The *Prima Facie* Case

1.    Standard

Anthony's burden to establish the *prima facie* case is not an onerous one (*See Tex. Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253 (1981)).  To establish a *prima facie* case, plaintiff need only show that he is a member of a protected class; he suffered an adverse action; and he was treated differently than a non-protected class employee, *id*.

The plaintiff must be allowed to establish the *prima facie* case without being burdened with the employer's justification for the challenged action (*See Vessels v. Independent School System,* 408 F.3d 763, 769 (11th Cir. 2005); *Walker v. Mortham*, 158 F.3d 1177, 1192-1193 (11th Cir. 1998)).

2.    The Instant Case

In the instant case, Anthony need only demonstrate that he was accused of the same offense as his non-protected class comparator, John McMillan; his investigation was handled differently than Mr. McMillan's; and he suffered a monetary tangible loss, $30,000 to $40,000 in his secondary income as a result of the disparate treatment (*i.e.,* adverse action).

Anthony was required to successfully complete a fitness for duty exam prior to his return from administrative leave to active duty, thereby permitting him to return to his secondary employment. He was also required to attend substance abuse counseling. Mr. McMillan, a white employee, was not required to undertake these procedures, thereby his administrative leave was shorter than Anthony's [doc. 64 at 8].

The district court and Judge Walker combined the resulting disciplinary stage together with the investigation stage to find that Anthony cannot make a *prima facie* case because in the end – disciplinary stage- Anthony was treated better than Mr. McMillan.

### a. *The discriminatory investigation*

Anthony believes herein lies the error. The resulting discipline stage is separate and distinct from the investigation stage (*See Cuevas v. Am. Express*

*Travel Related Servs.,* 2006 Dist. LEXIS 110029, f n. 3 (S.D. Fla. 2006), *citing Abel v. Dubberly,* 210 F.3d 1334, 1339 (11th Cir. 2000)). Mr. McMillan and Anthony were similarly situated for the investigation stage – the only stage that Anthony is contesting as discriminatory in ***this*** case ("***The discrimination lies in the manner that the two investigations were handled differently***") [doc. 6 at 6].

Both Mr. McMillan and Anthony were investigated for reporting to duty while under the influence of alcohol. Both employees were subjected to a preliminary breathalyzer test (*i.e.,* alco-sensor test). The alco-sensor test is a preliminary breathalyzer test which is used in the employment testing context to determine if further testing is needed (*See 49 C.F.R. §.40.243-245*).

According to DPS supervisors, both employees blew positive on this test. They did not show Anthony the results of the alco-sensor test [doc. 41 at 18:15-16 (*Pl dep.*)]. However, consistent with the then regulations in effect during the time of Anthony's investigation, he was ***immediately***[1]. within a matter of

_____

[1] Defendant in an offhanded manner tries to imply that the time of this test may have had an impact upon the results. As Anthony testified in his deposition, he received a text from Sargent Buchanan after 12:00 pm telling him to stand by at headquarters [doc. 41 at 14:14-17 (*Pl dep.*)]. Shortly thereafter Lt. Jackson met Anthony at headquarters [adjacent, credit union parking lot] and told him to get in the car [doc. 41 at 14:23-25 (*Pl dep.*)]. They drove to Troop C Command Building and waited for Sargent Buchanan [doc.

minutes transferred to an independent facility for a more intensive, superior breathalyzer test  (*i.e.,* confirmed test) (*See 49 C.F.R. § 40.251-253*).

This was the only test that could determine whether Anthony was to receive discipline (*i.e.,* termination). Anthony's test results demonstrated that not only he was not under the influence of alcohol, but the results did not indicate any traces of alcohol in his system [doc. 41 at 19:23-25 (*Pl dep.*)].

In the preliminary alco-sensor test stage, Mr. McMillan on the other hand ***confessed*** that he had consumed alcohol prior to reporting to duty [doc. 55 at 19]. DPS did not test Mr. McMillan further but decided to demote Mr. McMillan to a dispatcher with a reduction in salary.

Mr. McMillan's administrative leave was shorter than Anthony's[2] [doc. 55 at 23]. While on administrative leave, Mr. McMillan was not required to undergo a fitness for duty exam or substance abuse counseling like Anthony [doc. 64 at 8].

_____

41 at 15:15-18 (*Pl dep*.)]. Both Lt. Jackson and Sargent Buchanan performed breathalyzer tests on Anthony. They did not show him the results but told Anthony that he blew positive [doc. 41 18:18-25 (*Pl dep*.)]. They presented Anthony with a consent form  to sign agreeing to the offsite testing, and they proceeded to the offsite testing area, *id.* They arrived around 1:50 pm, and the test was immediately given [doc. 41 at 19:23-25 (Pl *dep*.)].

[2] Anthony was placed on administrative leave on August 5, 2017, and he did not return to active duty until February 2018 (almost 7 months).

### b. *During the discipline stage Mr. McMillan was not similarly situated to Anthony.*

After the investigation stage, the two then employees were no longer similarly situated for the discipline stage. Anthony's final confirmed test results showed that he had ***no traces*** of alcohol in his system, and therefore he could not be subjected to ***any*** discipline in accordance with the then state's own regulations. On the other hand, Mr. McMillan confessed to consuming alcohol prior to reporting to duty, and presumably DPS decided not to test him further because of his confession.

The Eleventh Circuit has held that even though two employees were engaged in the same altercation and accused of violating the same employer's internal policy, they were not similarly situated in the discipline stage because the plaintiff swung at the other employee while that employee merely put his finger into the plaintiff's face (*See Floyd v. Fed. Exp. Corp.,* 423 Fed. Appx. 924, 930 (11th Cir. 2011)).

As such, Mr. McMillan was similarly situated to Anthony during the investigation stage but not the discipline stage. They both should have received the same treatment during the investigation – administrative leave length, fitness for duty exam and substance abuse counseling. They did not; thereby causing

11

Anthony to suffer a $30,000- $40,000 loss of secondary income while he remained on administrative leave to complete the discriminatory conditions not imposed upon Mr. McMillan, a white employee.

       c. ***The alco-sensor test cannot be used interchangeably with the confirmed test during the investigation of a P.O.S.T employee accused of being under the influence of alcohol.***

Judge Walker in response to Anthony's argument, *sua sponte* decides that even though counsel did not address this issue, she would demonstrate that both troopers blew positive on the alco-sensor breathalyzer tests (preliminary breath testing), so presumably, they both should have been subject to discipline. According to Judge Walker, Mr. McMillan was demoted, so therefore he was treated worse than Anthony [doc. 55 at 23-24].

As Anthony has already demonstrated herein, he was subjected to a disparate investigation, and that he was not similarly situated to Mr. McMillan in the ***discipline*** stage because DPS had no confirmed test results that Anthony had any traces of alcohol in his system. Mr. McMillan on the other hand confessed to consuming alcohol immediately prior to reporting to duty.

Moreover, Judge Walker's interpretation or rewriting of the rules would not only contradict the Georgia Personnel Regulations in existence at the time

the facts that gave rise to this cause of action occurred but would undermine the U.S. Department of Transportation's classifications of preliminary breathalyzer testing and confirmed tests as used in employment testing for a certain class of employees, including P.O.S.T certified employees.

Aside from the ramifications of trial judges altering the state's personnel rules and regulations, this still should not account for the difference in treatment during the investigation stage.

Therefore Anthony, was not, and could not have been, subject to any discipline let alone termination (*See Ga. Reg 478-1-.21(1)(c)(4)*). As such he was not similarly situated to Mr. McMillan during the discipline stage which had no effect upon his investigation stage.

*Ga Reg. 12(b)* Dismissal reads as follows [doc. 47-3 at 15, ¶ 12]:

> (b)    If a P.O.S.T. certified employee has a verified positive drug test result or a ***confirmed*** [emphasis added in original] positive alcohol test, the Appointing Authority will notify the employee, in writing of immediate termination.

The alco-sensor test is not a ***confirmed*** test as used in the foregoing regulations [doc 58 at 4]. The only mechanism to obtain a confirmed test result which would lead to discipline would be the results of the independent testing facility *id.*

13

DPS's trained investigator assigned to Anthony's case testified at his deposition that Anthony's test results were negative, and there were no traces of whatever [DPS] was looking for [doc. 42 at 64 (*Howard dep.*)]. The two DPS supervisors who were investigating Anthony on August 5, 2017, informed Anthony that he would be terminated if he did not consent to the confirm test [doc. 41 at 19:19-22 (*Pl dep.*)]. DPS chose not to perform this test on Mr. Mc Millan presumably because he confessed to consuming alcohol prior to reporting for duty.

Whether DPS alleges that they were not trying to terminate Anthony, he simply argued in the district court – that DPS ***could*** not terminate him or take any disciplinary action because his confirmed test results demonstrated that he had no traces, let alone, alcohol in his system [doc. 47-3 at 15, ¶ 12 (*Ga. Personnel Reg.*)].

Moreover, the alco-sensor test results as a sole standard for discipline in alcohol consumption investigations would deprive not only Anthony but other employees in this position of their due process rights. Anthony argues that it is offensive, and Judge Walker's proposing this new standard of discipline when the employees are on notice of another written procedure as laid out in the Ga. Personnel Regulations lacks judicial integrity.

14

Even *arguendo*, if Judge Walker's alco-sensor test mechanism for discipline could be used in a case of this type, it still falls short. DPS did not articulate this reason for comparing or espousing that Anthony was treated worse than Mr. McMillan. Moreover, DPS's two supervisors would not have transported Anthony to the independent facility to undergo a confirmed test, if the alco-sensor test were the mechanism for disciplining Anthony. DPS could not discipline Anthony based upon the alco sensor results, and they knew this even if Judge Walker did not know such.

As the Supreme Court, held even an articulated reason which is sound and based upon facts must be articulated by the employer and not the district court (*See Miller-El v. Dretke*,[3] 545 U.S. 231, 125 S. Ct. 2317, 2332 (2005)). The onerous to present arguments during summary judgment is on the parties – not the district court (*See A.L.V. v. Jackson Cnty Sch. Bd.,* 635 Fed. Appx. 774, 787 (11th Cir. 2015)). One district court even held: "courts should not create arguments for the parties during summary judgment proceedings" (*See Streeter v. City of Pensacola*, 2011 U.S. Dist. LEXIS 162605 (N.D. Fla. 2011), *aff'd,* 501 Fed. Appx. 882 (11th Cir. 2012)).

---

[3] This is a ***Batson*** challenge, but such uses the same trilogy to establish the *prima facie* case as the *McDonnell-Douglas* methodology.

### d. *The endless mistake defense*

In adopting Judge Walker's report and recommendation, the district court held that even if DPS made a mistake, an employer may terminate an employee for no reason at all, as long as its action is not for a discriminatory reason [doc. 64 at 8].

Anthony argues the operative word is ***employer.*** Nowhere in any documents filed in the record does it indicate that DPS made a mistake or just "winged it" when it came to treating Anthony's investigation differently than Mr. McMillan. DPS followed the personnel regulations to investigate Anthony, and if the confirmed test result (independent testing facility) had produced a positive test, Anthony would have been terminated [doc.47-3 at 15, ¶ 12(b)].

The relevant inquiry is whether the record evidence demonstrates that the employer honestly believed the mistaken reasons and acted upon such and not its conclusory determinations espousing an error (*See EEOC v. Total System Servs., Inc.* 221 F.3d 1171, 1176 (11ᵗʰ Cir. 2000)). A recap of the record evidence would not support a mistake and would further demonstrate that DPS treated Anthony differently during the ***investigation*** than it treated Mr. McMillan.

The record evidence demonstrates the following:

- Anthony was contacted via text by his supervisor on August 5, 2017, after **12:00 pm** instructing him to stand by at headquarters [doc. 41 at 14-17 (*Pl dep*.)].

- Shortly thereafter Lt. Jackson met Anthony at headquarters [adjacent, credit union parking lot] and told Anthony to get in the car [doc. 41 at 14:23-25 (*Pl dep*.)].

- They drove to Troop C Command Building and **waited** for Sargent Buchanan [doc. 41 at 15:15-18 (*Pl dep*.)].

- Both Lt. Jackson and Sargent Buchanan performed preliminary breathalyzer tests and other field sobriety tests on Anthony. They did not show him the results but told Anthony that he blew positive on the alco-sensor (preliminary breathalyzer test) [doc. 41 at 18:18-25 (*Pl dep.*)].

- They presented Anthony with papers to sign consenting to the offsite testing, and they proceeded to the offsite testing area, *id.* The facility was located approximately 5.6 miles away from DPS headquarters and they were traveling on a Saturday (August 5, 2017)– *i.e.,* light traffic. They arrived around **1:50** pm, and the test was immediately given [doc. 41 at 19:23-25 (*Pl dep*.)].

17

On August 5, 2017, at 1:50 pm, DPS – trained supervisors of the Georgia State Patrol, ***knew*** that Anthony had no traces of alcohol in his system prior to DPS placing him on administrative leave, and subjecting him to disparate investigation conditions.

Moreover, even if Judge Walker may not have known the distinction between a preliminary breathalyzer test and a confirmed test, the DPS supervisors knew the difference. This is the same test that is used routinely in arresting motorists who are driving under the influence of alcohol or other impermissible drugs [doc. 41 at 26;15-22 (*Pl. dep.*)]. Anthony inquires where is the mistake, and how was it made?

It simply makes no sense that the employer treated Anthony like he was an old drunk that they were going to nail [doc. 41 at 17-18 (*Pl dep.*)]. *But Compare,* the treatment Mr. McMillan, a white employee, whom DPS claimed just used poor judgment in consuming alcohol prior to reporting to duty received was respectful [doc. 41 at 15-22; 17:6-1; 25:21-25; 26: 28:13 (*Pl dep.*)]. Anthony had no prior record of misconduct or reporting to work while under the influence of alcohol or impermissible drugs.

During summary judgment proceedings, DPS knew that they needed a reason they continued their investigation of Anthony and subjected him to

different conditions to which Mr. Millan was not subjected. To overcome this dilemma, they invented such. DPS relieves upon an alleged statement from Captain Renfroe, the only African-American supervisor in Anthony's chain of command. Captain Renfroe alleged that Anthony spoke with her about his social drinking while he was out on administrative leave.

Anthony declared under oath – this never happened, and that he did not talk to Captain Renfroe about his or anyone's social drinking [doc. 47-2,  ¶ 6 (*Pl dec*.)]. A plaintiff's sworn declaration with adequate facts and details is sufficient during summary judgment proceedings to oppose said motion (*See United States v. Stein,* 881 F.3d 853, 858 (11th Cir. 2018) *citing, Weldon v. Kraft, Inc.,* 896 F.2d 793, 800 (3d Cir. 1990)).

Judge Walker presumably recognizing the material issue of fact did not propose a ruling on this issue, but substituted still another reason on her own, in part, that Anthony was engaged in marketing a product to avoid alcohol detection- and this could harm DPS's reputation . Anthony demonstrated that in the video that he posted over the internet that this was a future product idea. He never represented that this product was in existence at the time of posting the video [doc. 41 at 71-72 (*Pl dep*.)].

Moreover, during the internal investigation, Captain Renfroe defended Anthony's right to do the video, *id*. It was Major Waldrop, the decisionmaker,

who initiated the investigation. After Anthony was interviewed, he was told by Lt. Col. Stephanie Stallings that DPS was investigating whether he had outside employment without seeking approval. He never heard any more about the investigation until he returned from administrative leave, and obtained the investigation file *via Open Records Act, id.*

Moreover, even if the product was available, and it was not, Anthony, as a public employee, had a First Amendment right to speak on matters of public concern [doc. 58 at 6]. An ***employer***, let alone a magistrate judge, cannot just assert any reason to rebut a *prima facie* case there has to be some fact-based connection with the personnel action at issue in the lawsuit (*See Bass v. Board of County Commissioners,* 256 F.3d 1095, 1106 (11th Cir. 2001)).

In this case, there is no comparison drawn between marketing a ***future*** device to monitor blood alcohol, and whether Anthony was an alcoholic who had reported to work while being under the influence of alcohol. There was no one drinking in the video; nor was there any encouragement to drink, *id.*

e. ***Adverse Action***

The district court questioned whether Anthony's fitness for duty is an adverse action but decided against making such a determination. The court

reasoned since Anthony could not demonstrate that he was treated differently than Mr. McMillan that this was not necessary [doc. 64-9-10]. However, it should be noted on this issue Judge Walker agreed with Anthony [doc. 55 at 18].

### i.    *standard*

To demonstrate an adverse action a plaintiff must demonstrate some tangible harm.

**Title VII – Section 2000e-2(a) reads as follows:**

(a) Employer practices. It shall be an unlawful employment practice for an employer-

*(1)* To fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any employee with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

*(2)* To limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

Anthony argues that being subjected to a longer administrative leave to accomplish a fitness for duty examination and attending substance abuse counseling when such were not required of Mr. McMillan, who confessed to

consuming alcohol prior to reporting to duty, adversely affected Anthony's secondary income, a privilege of employment.

Notwithstanding, the plain reading of the Title VII statute, the Eleventh Circuit, relying on a Ninth Circuit opinion[4], has held that being on paid administrative leave which results in "tangible harm" can constitute an adverse action (*See Valdeo v. City of Doral,* 662 Fed. Appx. 803 (11th Cir. 2016)).

### ii    *the instant case*

In this case*,* Anthony had to surrender his gun and shield during the course of his investigation, and he was expressly forbidden from engaging in any secondary work involving or related to law enforcement duties [doc. 41 at 42:12-17 (*Pl dep*.)]. As such, Anthony could not continue at his then secondary job at the Passion City Church while on administrative leave [doc. 41 at 44:13-25 (*Pl dep*.)].

Thus, he suffered a loss of $30,000 40,000, secondary income- "a tangible harm" [ doc. 41 at 44, 45 (*Pl dep*.)].

As such, Anthony makes a *prima facie* case.

---

[4] *See Dahlia v. Rodriguez,* 735 F.3d 1060, 1078-79 (9th Cir. 2013)

B.    Pretext

### 1. *Standard*

A plaintiff can demonstrate pretext by showing that defendant's articulated nondiscriminatory reason for the challenged action is unworthy of belief (*See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 519-20, 113 S. Ct. 2742, 125 L.Ed.2d 407 (1993)). Plaintiff, as the non-moving party, must demonstrate such weaknesses, implausibility, inconsistencies, incoherencies or contradictions in the employer proffered legitimate reasons for its actions that a reasonable factfinder would find them unworthy of credence (*See McCann v. Tillman,* 526 F.3d 1370. 1375 (11th Cir. 2008)).

### 2. *The instant case*

DPS appears to articulate as its non-discriminatory reasons for extending Anthony's administrative leave and requiring Anthony to undergo a fitness for duty evaluation as well as substance abuse counseling, to two concerns alleged by Captain Renfroe: that Anthony was advertising a product used to monitor blood alcohol in his social media accounts and she had had previous telephone conversations with Anthony about social drinking.

Anthony does admit that Captain Renfroe called him when he was on administrative leave to see how it was going. However, not once did they engage

in any discussions about his or anyone else's social drinking [doc. 47-2 ¶ 6 (*Pl dec.*)]. This is blatantly false.

As for the blood alcohol monitoring device, there was nothing for Captain Renfroe to have any concerns. The online video depicted Anthony marketing a future device that was not even in existence at the time of posting the video online  – it was a design for possible *future* production [doc. 41 at 72:1-6 (*Pl dep*.)].

When Anthony returned to duty and obtained a copy of the I.A. investigation file concerning this device, Anthony discovered that Captain Renfroe did not have a problem with the video. She told Major Waldrop that this was *not* a problem [doc. 41 at 73:6-11 (*Pl dep*).]. In any event, the investigation was dropped after Anthony was interviewed and he never heard any more about such until this case was filed.

Matter of fact it was Major Waldrop who initiated the investigation, *id. But Compare,* he did not terminate Mr. McMillan who *admitted* to consuming alcohol prior to reporting to duty, and he could have, but he traces the African-American plaintiff's social media accounts, and initiates investigations concerning future products connected with blood alcohol monitoring.

While reasonable minds may differ, Anthony is entitled to a presumption of truth and to have all reasonable inferences drawn in his favor during summary judgment proceedings (*See Anderson v. Libby Lobby,* 477 U.S. 242, 252-53 (1986)).

## II.    WHETHER DOCUMENTS FROM AN EEOC INVESTIGATION FILE CAN BE USED IN SUMMARY JUDGMENT PROCEEDINGS WITHOUT AUTHENTIFICATION?

The excerpts from Anthony's EEOC file marked as doc. 47-2, ex B (*Pl dec.*)] were sent to him by the EEOC and discussed with him (the reason the commission was not going forward with the conciliation and, instead elected to dismiss this claim) [doc. 47-2 at 5, ¶ 13 (*Pl dec.*)].

The district court dismissed the excerpts on the grounds of lack of authenticity, hearsay and a "potentially" expert witness report (legal conclusions) [doc. 64 at 10].

### 1. Standard

The Eleventh Circuit itself has set forth the criteria for admissibility of portions of the EEOC file in binding precedent (*See Barfield v. Orange County,* 911 F.2d 644, 649-50 (11th Cir. 1990) (EEOC findings and determinations are admissible). Also, *See Beech Aircraft Corp. v. Rainey,* 488

U.S. 153, 170, 109 S. Ct. 439, 102 L.Ed.2d 445 (1988)). The Eleventh Circuit has also held that pursuant to F.R.Evid. 901(a) documents need not be authenticated at the summary judgment stage as long as they are capable of being authenticated at trial (*See McMillian v. Johnson*, 88 F.3d 1573, 1584 (11th Cir. 1996)).

Hearsay is admissible during summary judgment as long as the declarant or speaker is available to show up during trial to testify (*See Jones v. UPS Ground Freight,* 683 F.3d 1283, 1294 (11th Cir. 2012); *Macuba v. DeBoer,* 193 F.3d 1316, 1324 (11th Cir. 1999)).

2. <u>The Instant Case</u>

The excerpts were communicated to Anthony by his investigator; that the Commission found discrimination in the third claim – that DPS, all white management, had systemically discriminated against African Americans for promotions for the corporal position and higher managerial positions. Additionally, Anthony received a conciliation package for this claim only.

His investigator later communicated that the Commission was not going forward with the conciliation agreement because Anthony had not filed a charge for a promotion within the relevant time frame, and hence this charge [claim] would be dismissed [doc. 47-2, ¶ 13 (*Pl dec.*)]. Since the documents

were transmitted to him by his investigator, such are admissible during the summary judgment stage (*See Karas v. New NGC, Inc.* 2013 U.S. Dist. LEXIS 193610 (N.D. Ga. 2013)) (EEOC findings and determinations are admissible).

Anthony argues that the EEOC documents are admissible at the summary judgment stage, and even if they were not, he can testify to what documents he received from the EEOC, *id.*

III,    WHETHER ANTHONY WAS DENIED THE OPPORTUNITY TO SIT FOR THE CORPORAL EXAM BECAUSE OF HIS RACE?

Anthony argues that he was denied an equal opportunity to sit for the corporal's exam in 2018 because his then supervisor told him not to get involved with any DPS matters while he was on administrative leave. The district court held Anthony did not assert that only whites were eligible to take the exam or that only whites were promoted to corporals based upon that exam. Therefore, Anthony cannot make a *prima facie* case.

1.    <u>The Standard</u>

In an individual disparate treatment case, a plaintiff need not alleged that every black (bottom line defense) was subjected to race discrimination for the personnel matter at issue in the case (*See Connecticut v. Teal,* 457 U.S. 440, 454 (1982)). Rather, plaintiff need only demonstrate that he, a protected

class employee, was treated differently than similarly-situated, non-protected class employees. Also See *White v. EEOC*, 881 F.2d 1006, 1009 (11th Cir. 1989)).

2,    <u>The Instant Case</u>

Whether the supervisor gave Anthony, erroneous information to preclude him from qualifying for the examination cannot merge into the *prima facie case (See Vessels, id; Walker, id*.). Anthony must be allowed to make his *prima facie* case before he encounters the reason articulated by the employer, *id.*

In this case, DPS articulated that Anthony could have investigated the issue and discovered that there was no policy that precluded him from taking the exam while he was out on administrative leave. This would have set Anthony up for discipline – insubordination.

Anthony argues rather a reasonable jury could find discrimination in DPS's supervisor's directive for Anthony is best left to a reasonable jury given the history of systemic lack of African American, high-level managers within DPS -the State Patrol.

## CONCLUSION

To escape summary judgment, Anthony need not prove his case by a slight preponderance of the evidence; rather he need only point to some evidence which could cause a reasonable jury to find for him (*See Maddow v. Proctor & Gamble*, 107 F.3d 846, 851 (1997)).

While reasonable minds may differ whether Anthony, was treated differently because of his race, the non-moving party, is entitled to a presumption of truth during summary judgment.

Anthony respectfully requests that this court reverse the judgment of the district court relative to the claims asserted herein and remand this case for an immediate trial on the merits.

Respectfully submitted this 21st day of January 2022.

*Ethel L. Munson*

_____
ETHEL L. MUNSON
Attorney for Appellant

3295 River Exchange Drive, Suite 510
Norcross GA 30092
munsonel@aol.com
(770) 449-4630

29

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this brief complies with the typed-volume limitations set forth in F.R.A.P. 32(a) (7) (B). This brief contains 5,671 words. It was typed in Word, using Windows 11 as the operating system.

This 21st day of January 2022.

/s/ *Ethel L. Munson*
_____
ETHEL L. MUNSON
Attorney for Appellant
Georgia Bar No. 529625

## <u>CERTIFICATE OF SERVICE</u>

The Notice of Electronic Filing that will be automatically generated by the court's Electronic Filing System in response to the filing of **APPELLANT'S BRIEF** will effectuate service upon all attorneys of record as such attorneys are filers withing the meaning of Eleventh Circuit's Guide to Electronic Filings.

This 21st day of January 2022.

/s/ Ethel L. Munson
_____

ETHEL L. MUNSON
Attorney for Appellant
Georgia Bar No. 529625

3295 River Exchange drive, Suite 510
Norcross GA 30092
(770) 449-4630
munsonel@aol.com