**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**
_____

**Appeal No. 21-13561-CC**

_____

**CLYDE ANTHONY,**

Plaintiff-Appellant,

versus

**GEORGIA DEPARTMENT OF PUBLIC SAFETY,**

Defendant-Appellee.

_____

**On Appeal from the United States District Court
For the Northern District of Georgia
District Court Docket No. 1:19-CV-05303-SDG**
_____

**REPLY BRIEF**

ETHEL L. MUNSON
*Attorney for Appellant*
3295 River Exchange Drive
Suite 510
Norcross, Georgia 30092
(770) 449-4630

*Anthony v. Department of Public Safety*
Appeal No. 21-13561-CC

<u>CERTIFICATE OF INTERESTED PERSONS AND</u>

<u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Eleventh Circuit Rule 26.1-1, the following is an alphabetical list of the trial judges, attorneys, persons, firms, partnerships and corporations with any known interest.

1.     Anthony, Clyde

2.     Carr, Christopher M., Esq.

3.     Grimberg Steven D., Honorable

4.     Munson, Ethel L., Esq.

5.     Poole, Courtney C., Esq.

6.     Stoff, Katherine P., Esq.

7.     Webb, Bryan, Esq.

8.     Walker, Linda T., Honorable

# **TABLE OF CONTENTS**

*Page*

CERTIFICATE OF INTERESTED PERSONS...................................................ii

TABLE OF CONTENTS .....................................................................................iii

TABLE OF CITATIONS ................................................................................. v

STATEMENT OF THE ISSUES........................................................................1

ARGUMENT AND CITATIONS OF AUTHORITY

- WHETHER THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT ?........................................................................2

- WHETHER DOCUMENTS FROM AN EEOC INVESTIGATION FILE CAN BE USED IN SUMMARY JUDGMENT WITHOUT AUTHENTIFICATION?.............................. 12

- WHETHER ANTHONY WAS DENIED THE OPPORTUNITY TO SIT FOR THE CORPORAL EXAM BECAUSE OF HIS RACE?................................................................ 14

CONCLUSION.....................................................................................................16

CERTIFICATE OF COMPLIANCE ....................................................................18

CERTIFICATE OF SERVICE..............................................................................19

# **TABLE OF CITATIONS**

Cases

*Anderson v. Liberty Lobby*,..........................................................................9

  477 U.S. 242 (1986)

*Bass v. Bd of County Comm'rs*,...................................................................5

  256 F.3d 1095 (11th Cir. 2001)

*Berg v. Florida Dep't of Labor,* ...............................................................12

  163 F.3d 1251 (11th Cir. 1998)

*Cann v. Tillman,*.........................................................................................16

  526 F.3d 1370 (11th Cir. 2008)

*Chapman v. AI Transp.,*...............................................................................8

  229 F.3d 1012 (11th Cir. 2000), *en banc*)

  *Maddow v. Proctor & Gamble, Inc.,* ........................................................5

  107 F.3d 846 (11th Cir. 1997)

*McDonnell Douglas v. Greene.* .........................................................4,5, 15

  411 U.S. 792 (1973)

*McMillan v. Johnson,*.................................................................................13

  88 F.3d 1573 (11th Cir. 1996)

*Thompkins v. Morris Brown,* .....................................................................12

. 752 F.2d 558 (11th Cir. 1985)

*United States v. Stein,* ............................................................................... 9

881 F.3d 853 (11th Cir. 2018)

*Vessels v. Independent School System,* ..................................................... 2

408 F.3d 763 (11th Cir. 2005)

*Walker v. Mortham,* ................................................................................... 3

158 F.3d 1177 (11th Cir. 1998)

*Weldon v. Kraft, Inc.,* ............................................................................... 9

896 F.2d 793 (3d Cir. 1990)

Statutes

U.S.C. Const. Amend.5 ...........................................................................

U.S.C. Const. Amend. 4 .........................................................................

F.R.Civ.P. 56 ......................................................................................... 8

F.R.Civ.P. 37 ......................................................................................... 14

F.R.Civ.P. 26 ......................................................................................... 14

*Civil Rights Act of 1964 "*Title VII" ....................................................... 16

42 U.S.C. § 2000e

*Family Medical Leave Act* "FMLA" .................................................. 3, 10, 11

*Freedom of Information Act* "FOIA" ....................................................... 13

Other Authorities

*49 C.F.R. .§ 40.243* .......................................................................................7

*49 C.F.R. § 251-2* ..........................................................................................7

*Ga. Reg. 478* ...................................................................1, 6, 7, 4, 15, 16

ISSUES PRESENTED FOR REBUTTAL[1]

I.    WHETHER THE DISTRICT COURT ERRED WHEN IT GRANTED DEFENDANT-EMPLOYER'S MOTION FOR SUMMARY JUDGMENT?

II    WHETHER DOCUMENTS FROM AN EEOC INVESTIGATION FILE CAN BE USED IN SUMMARY JUDGMENT WITHOUT AUTHENTIFICATION?

III    WHETHER ABTHONY WAS DENIED THE OPPORTUNITY TO SIT FOR THE CORPORAL EXAM BECAUSE OF HIS RACE?

---

[1] Anthony stands behind his Statement of Facts

I.    WHETHER THE DISTRICT COURT ERRED WHEN IT GRANTED DEFENDANT-EMPLOYER'S MOTION FOR SUMMARY JUDGMENT?

In the case *sub judice*, DPS argues that Anthony cannot make a *prima facie* case because he cannot demonstrate that John McMillan, is similarly situated to him in all material aspects [Appellee's brief at 11-12]. Specifically, DPS argues that the two individuals are not similarly situated during the investigation phase because Anthony's administrative leave was interrupted by his FMLA leave and Anthony was subjected to internal investigations while Mr. McMillan was not, *id.*

Anthony cannot agree with DPS. Thus, he has drawn a table setting forth a comparison of the parameters used in the two investigations for the same accusation.

| Parameters/compared | JOHN MCMILLAN | CLYDE ANTHONY |
|---|---|---|
| Job Title | Corporal/State Trooper | TFC/State Trooper |
| Race | white | black |
| Accusation | Reasonable suspicion of reporting to work while under the influence of alcohol | Reasonable suspicion of reporting to work while under the influence of alcohol |
| Alco-sensor[2] (PBT) results | 0.019 | 0.016, 0.014 |

[2] The alco-sensor is a preliminary breathalyzer test in the employee testing program (*See Ga. Reg. 478-1-.21(1)(c )(4)(6)*).

| Confirmed (EBT) results | N/A- no test given | 0.000 |
|---|---|---|
| Administrative Leave (dates) | September 12, 2015-December 15, 2015 | August 5, 2017-February 1, 2018[3] |
| Fitness for Duty Exam | None required | Yes – required to undergo Substance Abuse Counseling, and EAP. |
| Final Decisionmaker | Major Waldrop | Major Waldrop |

Anthony argues that he received disparate treatment during the course of the investigation which caused him to suffer a substantial financial loss of secondary income ($30,000 -$40,000) [doc. 41 at 45:1-3 (*Pl dep.*)]. Thus, consistent with binding Supreme Court precedent, Anthony makes a *prima facie* case as such relates to the investigation stage (*See McDonnell Douglas v. Greene,* 411 U.S. 792 (1973)).

As this court previously held, the plaintiff must be able to establish his *prima facie* case before encountering the employer's alleged articulated non-discriminatory reasons for the differential treatment (*See Vessels v. Independent School System,* 408 F.3d 763, 769 (11th Cir. 2005); *Walker v. Mortham*, 158 F.3d 1177, 1192-1193 (11th Cir. 1998)).

---

[3] Anthony was on FMLA leave from November 8, 2017- November 30, 2017 [doc.41 at 59:14-16 (*Pl dep.*)].

###### i.    *The prima facie case*

Anthony demonstrates that not only can he make a *prima facie* case under the traditional *McDonnell Douglas,* methodology but he can make a *prima facie* case under DPS's seemingly misinterpretation of "similarly situated in all material respects" standard, *id.*

At the time that Major Waldrop placed Anthony on administrative leave after the August 5, 2017, incident, Anthony just like Mr. McMillan had no prior history of disciplinary actions, investigations and/or wrong doings [doc. 43 at 33:14-18 (*Waldrop dep.*].

Major Waldrop was the final decisionmaker on both former troopers' administrative leave [doc. 43-5 at 7, 22 (*Waldrop dep. ex 5*); doc. 41 at 24:28:1-11 (*Pl dep.)*].

Even though his physician released him to return to duty on November 30, 2017, Anthony was immediately placed back on administrative leave on December 1, 2017 [doc. at 41:14-18 (*Pl dep.*)].

Anthony suffered an adverse action because he lost over $30,000 -$40,000 secondary income from other approved work [doc. 41 at 42:23-25, 44:1-4 (*Pl dep.*)].Thus, Anthony makes a *prima facie* case notwithstanding DPS convoluting

its articulated reasons together with the traditional *prima facie* case to increase the plaintiff's burden to survive summary judgment.

Separating the two components which comprise a plaintiff's evidentiary burden as the Supreme Court set forth in *McDonnell Douglas,* Anthony will demonstrate he does indeed present sufficient evidence to have this case submitted to a jury.

## ii.    *Pretext*

To demonstrate pretext, Anthony need only point to the existence of evidence which could cause a reasonable jury to find for him (*See Maddow v. Proctor & Gamble, Inc.,*107 F.3d 846, 851 (11th Cir. 1997)). In the instant case, Anthony can debunk DPS's articulated reasons for the differential treatment between Mr. McMillan and himself during the investigation stage. As this court held in *Bass v. Bd of County Comm'rs*, 256 F.3d 1095, 1108-09 (11th Cir. 2001):

> "[w]e recognize that a defendant may terminate an employee for good or bad reason without violating federal law" and "we are not in the business of adjudging whether employment decisions are prudent or fair" [citation]. We are however in the business of adjudging whether an employer violates Title VII by making employment decisions based on race.

DPS through a bizarre, discriminatory, contradictory scheme, used the official regulations governing alcohol testing for state employees accused of being under the

influence of alcohol while on official duty as justification for placing Anthony on a longer administrative leave than Mr. McMillan, and subjecting Anthony to a fitness for duty examination while omitting such requirements for Mr. McMillan (*See* "*Ga. Reg. 478-1-.21, 12(b) Drug & Alcohol-Free Workplace Programs*" [doc. 47-3]).

Notwithstanding the clear written regulations, DPS chose not to give Mr. McMillan a confirmed test[4] but Anthony was required to take the confirmed test. Anthony was also told by the two DPS managers who administered the alco sensor testing on August 5, 2017, that he had to sign the consent form for the third -party, off-site, testing or he would be terminated [doc. 41 at 19:6-21 (*Pl dep.*)]. If his confirmed test results came back positive Anthony, a then P.O.S.T employee, would have been terminated immediately (*See Ga. Reg. 478-1-.21. 23 (12(b)*).

After the independent, third-party facility,  confirmed test results demonstrated that Anthony tested 0.00, showing that he had no trace of alcohol in his system, DPS disregarded such, and placed Anthony on administrative leave. *But Compare*, after Mr. McMillan confessed that he consumed alcohol prior to reporting to duty, he was not subjected to any further testing, inclusive of the confirmed test which could have resulted in his termination and not a demotion.

---

[4] DPS claims that Mr. McMillan confessed to consuming alcohol prior to reporting for duty, so notwithstanding the written requirement that a P.O.S.T certified employee should be given a confirmed test, they disregarded such  (*See Ga. Reg. 478-1-.21.23 (12)(b)*).

As Anthony testified at his deposition, the breathalyzer testing mechanisms used to test alcohol presence in on-duty state troopers were the same as the testing mechanisms for DUI suspects. Anthony also testified that as part of his training, a trooper was required to test a DUI suspect even if he/she admitted to driving intoxicated; such had to be confirmed with the proper testing [doc. 41 at 26:20-22 (*Pl dep.*)].

The district court compared both state troopers based only on their alco sensor (PBT) results[5]. There is no record evidence that either of the former state troopers were subjected to any regulations in effect during the time of their respective investigations, which authorized such. The alco sensor test is classified as a preliminary breath test (PBT), and not a confirmed evidentiary breath test (EBT)[6].

The two breathalyzer testing mechanisms are not used interchangeably (*See 49 C.F.R. .§ 40.243-245*; *49 C.F.R. § 251-253*). There are no provisions in Ga *Reg. 478* which would permit the abbreviated testing version as used in Mr. McMillan's situation. Neither are there any provisions in the foregoing regulations which would

---

[5] DPS failed to follow the written regulations in effect at the time that the two DPS managers administered the alco sensor test to Anthony. They failed to show the test results to Anthony and nor did they video tape the sobriety tests [doc.67 at 17:24-25; 18:13-24 (*Pl dep.*)].

allow the suspected trooper to confess to consuming alcohol and still remain employed in a P.O.S.T. certified position.

DPS argues that Anthony had to undergo a fitness for duty examination to enable him to return to duty from administrative leave. Mr. McMillan did not have to undergo such an examination [doc. 43, ex 5 (*Waldrop dep.*)].

### iii.    *Fitness for Duty Examination*

DPS argues that Anthony was required to undergo a fitness for duty examination because Captain Renfroe had concerns about his relationship with alcohol. Of course, Anthony cannot, and does not need to, rebut such wide-open, subjective alleged concerns (*See Chapman v. AI Transp*., 229 F.3d 1012, 1036 (11th Cir. 2000), *en banc*)(a subjective reason must be specific enough so that the plaintiff can rebut such).

However, be it as it may, Captain Renfroe declared under penalty of perjury that she had telephone conversations with Anthony while he was on administrative leave, and that Anthony discussed his social drinking with her [doc. 47 at 9-10].

Anthony responded in his own sworn declaration, that he had no such conversations with Captain Renfroe about his or anyone's social drinking  [doc. 47-2,¶ 6 (*Pl dec.*)]. A plaintiff's sworn statement is sufficient to withstand summary judgment under Rule 56 if it complies with the requirements set forth in Rule 56(f)

(*See United States v. Stein,* 881 F.3d 853, 858 (11th Cir. 2018)) *citing, Weldon v. Kraft, Inc.,* 896 F.2d 793, 800 (3d Cir. 1990)).

DPS also claims that Captain Renfroe decided that Anthony should undergo a fitness for duty examination before returning to full duty. As Anthony demonstrated, it was the ***Human Resources Department*** that required such and not Captain Renfroe [doc 47-2, ¶ 4 (*Pl dec.*)].

Human Resources did not require such of Mr. McMillan even though Mr. McMillan confessed to consuming alcohol prior to reporting to duty, and Anthony's confirmed test results demonstrated that he did not have any traces of alcohol in his system on August 5, 2017.

While reasonable minds may differ, Anthony is entitled to a presumption of truth and to have all inferences drawn in his favor during summary judgment proceedings (*See Anderson v. Liberty Lobby*, 477 U.S. 242, 252-53 (1986)).

### iv.    *Internal Investigation*

In or around the middle of December 2017, Anthony was contacted by Lt. Col. Stephanie Stallings and told that there was an internal investigation concerning one of his social media videos [doc. 41 at 65:13-17 (*Pl dep.*)]. He was instructed to contact Col. Ashley Haynes. He did so and was told that he was under investigation concerning his engaging in outside secondary employment without going through the proper channels [doc. 41 at 67:23-25 (*Pl dep.*)].

Anthony informed Col. Haynes that his video posting concerning the HELO was not outside employment because he was not an employee of the company, and he made no income from marketing the future device. He received only points for future investments, *id.* He also pointed out that in the video he was marketing a product that was not in existence but was a product for possible ***future*** use.

Even subtracting  the FMLA leave from the period of time that Anthony was absent from his regular duty, his administrative leave was longer than Mr. McMillan. Anthony was on administrative leave approximately ***5 months***  (August 5, 2017-February 1, 2018) (this does not include his FMLA leave from November 8, 2018, - November 30, 2018). Mr. McMillan was on total administrative leave for the period for approximately ***3 months*** (September 12, 2015-December 15, 2015 [doc. 43-5 at 7, 22].

Not only was the investigation unwarranted but it was initiated by the decisionmaker, Major Waldrop. Captain Renfroe was trying to convince him that this was not a problem [doc. 41 at 73:6-11 (*Pl dep.)*]. Anthony did not receive any notification that he was under investigation for working presumably what Major Waldrop considered secondary employment without prior authorization until after he was released by his treating physician to return to duty on November 30, 3017.

A review of the timeline would demonstrate that the events which DPS states as necessitating a longer period of time that Anthony was on administrative leave

did not occur until after he had already been on administrative leave for approximately three months, deducting the FMLA leave, and thus would have no bearing on DPS's decision to subject Anthony to a longer administrative leave than Mr. McMillan.

The timeline is as follows:

- Incident -August 5, 2017;

- Placed on Administrative leave – August 5, 2017, pending an investigation whether he was under the influence of alcohol;

- Anthony was on FMLA leave for the period of time commencing with November 8, 2017, and lasting up until November 30, 2017;

- Anthony's treating physician released him to return to duty on November 30, 2017;

- Anthony did not report to duty on December 1, 2017, instead he was placed back on administrative leave;

- Anthony was contacted by Lt. Col. Stephanie Stallings on December 14 or 16, 2017, concerning a violation of secondary employment;

- The video had been posted on social media in, or around September 2017- Anthony had just started with Global Networks [doc. 41 at 72:21-23 (*Pl dep.*)];

- After one follow up telephone conversation with Col. Haynes a few days later, Anthony never heard any more about the investigation from Lt. Col. Stallings, Col. Haynes, Major Waldrop, Captain Renfroe or anyone else concerning that investigation.

Anthony believes what the district court's determination does indicate is that DPS used a written objective policy in a subjective discriminatory manner to justify treating Anthony differently than Mr. McMillan during the investigation stage. Thus, this alone is sufficient to demonstrate pretext let alone a *prima facie* case (*See Berg v. Florida Dep't of Labor,* 163 F.3d 1251, 1255 (11th Cir. 1998); *Thompkins v. Morris Brown,* 752 F.2d 558, 565, n. 16 (11th Cir. 1985)).

II.    WHETHER DOCUMENTS FROM AN EEOC INVESTIGATION FILE CAN BE USED IN SUMMARY JUDGMENT WITHOUT AUTHENTIFICATION?

DPS argues that the findings of the EEOC (statistical report) is neither attested nor authenticated and Anthony has presented no foundation for the document [Appellee's brief at 34-35].

Appellant cannot agree. DPS's position that the EEOC file excerpts are not admissible at the summary judgment stage ignores the basic legal concept of admissibility of documents for use in summary judgment proceedings. The

document need only be capable of being authenticated at trial– it need not be authenticated during the summary judgment stage (*See McMillan v. Johnson*, 88 F.3d 1573, 1584 (11th Cir. 1996)).

DPS has not cited any legal authorities which require the investigator to attest to every document or notes that is included in an official investigation file and Anthony knows of none. The statistical documents (the excerpts) appear to have been generated by EEOC personnel. A clear reading of the document would indicate that the EEOC employees  are communicating to each other about the class claim.

The EEOC findings were made before the class claim was dismissed[7]. There is not one shred of evidence that this report was prepared by an outside expert, or by anyone who was not employed by the EEOC.

Anthony has no facts or opinions which would suggest that the EEOC employees plagiarized the excerpts which supported the EEOC's finding that DPS

---

[7] DPS's seemingly rebuke of Anthony is misplaced as well as unwarranted. Anthony obtained his investigation file under the *"Freedom of Information Act"* (FOIA). All exempted documents were removed prior to Anthony receiving the file. In Anthony's administrative proceedings, the EEOC did not go forward with conciliation since the class claim was dismissed. However, even if this claim was not dismissed, since the EEOC charge proceeded to litigation, there is no restriction upon Anthony using the investigation and/or findings of this claim in this litigation .

had discriminated systemically against African Americans in high-level promotions from corporal and above.

DPS's argument that Rule 37 (c) (1) would block the "so-called" unknown author from testifying presumably at trial is without merit. Rule 26(e) requires supplementing discovery responses and mandatory disclosures only if the additional or corrective information has not otherwise been made  known to the other party during the discovery process or in writing. Anthony provided a copy of the EEOC investigation file to DPS prior to discovery. DPS was free to do whatever follow up discovery that they deemed necessary.

Anthony has addressed the district court's rulings on the EEOC excerpts when the court issued such [Appellant's brief at 25-27]. As such, he stands behind his argument.

III.    WHETHER ANTHONY WAS DENIED THE OPPORTUNITY TO SIT FOR THE CORPORAL EXAM BECAUSE OF HIS RACE?

DPS argues that there is no policy that precluded Anthony from sitting for the Corporal Exam in January 2018, because he was on administrative leave; notwithstanding, that his then supervisor instructed him not to be involved with DPS official matters [Appellee's brief at 29, 30].

Anthony makes a *prima facie* case of failure to promote by demonstrating the following:

(1) He is a member of a protected class;

(2) He was qualified to sit for the corporal exam;

(3) He did not make an application to take the exam based upon directives of his supervisor;

(4) He was not considered for the position at issue.

(*See McDonnell Douglas v. Greene, id*).

Anthony can demonstrate that he was qualified to take the exam by having previously taken the qualifying corporal exam [doc. 41 at 101:20-25; 102:1-3 (*Pl dep.*)]. He was told by his supervisor not to be involved in any official DPS matters while he was on administrative leave  [doc.47-2 , ¶ 10 (*Pl dec.*)].

DPS seemingly, argues as its non-discriminatory articulated reason that Anthony should have researched the policy and taken the exam regardless as to the supervisor's directive.

A plaintiff's burden to escape summary judgment is to point to the existence of some evidence which could cause a reasonable jury to find for him (*See Maddow* at 851, *id*,). DPS appears to have argued in this same appeal, that they did not have to follow the *Ga. Reg. 478* when testing Anthony or Mr. McMillan for reporting to

work while under the influence of alcohol, but now when it is convenient for them to do otherwise, they argue that there is no policy that would have prevented Anthony from not taking the exam. Such contradictions, in itself may be evidence of pretext (*See Cann v. Tillman,* 526 F.3d 1370 (11th Cir. 2008)).

As Anthony has already shown DPS had a history of not promoting African Americans to supervisory positions from corporal and up [doc. 47-2 (*Pl ex. B*)].

## CONCLUSION

DPS believes that Anthony is subjectively arguing with it because in effect even though they relied upon the *Ga Reg. 478* to test Anthony and to force him to undergo the third-party facility independent test, they are not bound by the *Ga. Reg. 478* because they can do whatever they want in testing Anthony.

If DPS is able to determine that the alco-sensor or some other interim preliminary test is the monitoring mechanism for discipline, inclusive of investigations, then they believe that they can do so. This is a deeply flawed, unconstitutional position which leaves no Fourth Amendment or due process protection for the employees.

Moreover, DPS's position undermines the *Eighty-Eighth Congress'* purpose in enacting the *Civil Rights Act of 1964, "*Title VII*"*- to eliminate discrimination in the workplace.

Anthony respectfully requests that this court reverse the judgment of the district court and remand this case for an immediate trial on the merits.

Respectfully submitted this 14th day of March 2022.

*ETHEL L MUNSON*

_____

ETHEL L. MUNSON
Attorney for the Appellant

3295 River Exchange Drive
Suite 510
Norcross GA 30092
(770) 449-4630
munsonel@aol,com

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this brief complies with the typed-volume limitations set forth in

F.R.A.P. 32(a) (7) (B).  This brief contains 3,216 words.  It was typed in Word, using

Windows 11 as the operating system.

This 14th day of March 2022.

*/s/ Ethel L. Munson*
_____
ETHEL L. MUNSON
Attorney for Appellant
Georgia Bar No. 529625

## **CERTIFICATE OF SERVICE**

The Notice of Electronic Filing that will be automatically generated by the court's Electronic Filing System in response to the filing of **REPLY BRIEF** will effectuate service upon all attorneys of record as such attorneys are filers withing the meaning of Eleventh Circuit's Guide to Electronic Filings.

This 14th day of March 2022.

/s/ Ethel L. Munson

_____

ETHEL L. MUNSON
Attorney for Appellant
Georgia Bar No. 529625

3295 River Exchange drive, Suite 510
Norcross GA 30092
(770) 449-4630